270 A.2d 912.

B. A. BUONANNO, INC. *vs.* VITO PEZZILLO.

NOVEMBER 18, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This civil action was brought to recover money owed on a book account. A jury-waived trial was held in the Superior Court. The trial justice found for the plaintiff in the full amount of the account, to wit, $1,221.94. Judgment was entered and this appeal ensued.

The single issue before the trial court was whether the money admittedly due plaintiff was a personal obligation of defendant or a corporate debt of a bankrupt family business. The evidence on this question was in direct conflict.

The plaintiff has sold meats and other provisions at wholesale for about a quarter of a century. One of its customers was Pezzillo's Market, Inc., a family corporation. It had been purchasing meats from plaintiff since, or at least, the early nineteen fifties. The defendant's father was the president and treasurer of the corporation and defendant was its secretary. His three brothers also worked at the market. Several times each week defendant would drive to plaintiff's plant, select and weigh the meat, receive a copy of an invoice therefor, and transport the newly purchased goods to the market. All sales were on credit. The plaintiff would send a weekly statement of the money owed. Most of the invoices during this period of time were made out to "Pezzillo's Market" or "Pezzillo's."

Near the end of May or the beginning of June 1961, plaintiff's president testified he saw defendant at the wholesaler's premises and informed him that because of the "buildup" in the market's account, something had to be done. Whereupon the witness in substance said that defendant agreed that all future purchases would be billed to him and that defendant would be responsible for the payment of the new account. Introduced into evidence was a summary statement of the new account standing in the name of "Vito Pezzillo." It shows some 29 purchases

totaling $1,221.94 made during the period from June 14, 1961 through August 15, 1961. For each purchase listed on the account, an invoice was introduced showing that it was made out to "V. Pezzillo."[1] On August 15, 1961 a fire completely destroyed the market. Several months later, Pezzillo's Market, Inc. was petitioned into bankruptcy by defendant in his capacity as secretary of the market corporation. Schedule A-3 on the bankruptcy petition lists plaintiff as an unsecured creditor that is owed $1,200. The plaintiff, however, did not file a claim in the bankruptcy proceeding.

The defendant denied that he ever told plaintiff's president that he personally would pay for all the meat furnished the market after June 1961. He introduced into evidence eight different invoices dated at various times in the early 1950's. The eight invoices were designed to show that at a time when the account stood in the corporate name, the invoices carried the name of defendant. The defendant's theory was that even though in the three-month period in the summer of 1961 plaintiff's invoices were in his name, this practice was no different than that followed when the market was responsible for the meat purchases. The defendant, however, conceded that in any one year the market made over 200 different purchases from plaintiff. Numerous invoices were then introduced into evidence to show that the overwhelming bulk of purchases made prior to June 14, 1961 were invoiced to the Pezzillo corporation.

Credibility was the key in this case. The trial justice in choosing to believe plaintiff's version of what went on in the summer of 1961 gave special weight to the testimony of plaintiff's bookkeeper. This individual was retired at the time of trial in 1969. He informed the court that he

---

[1] In some of the exhibits, the name "Pezzillo" is spelled "Pezzullo."

was present when defendant told plaintiff's official to open the new account in his name. This witness's testimony together with his lack of interest in the outcome of the suit convinced the trier of fact of the persuasiveness of plaintiff's claim. The trial justice in his decision remarked that it was significant to him that the market's bankruptcy petition was not filed until after defendant's real estate had been attached by plaintiff. He also commented on defendant's attempt to present only those invoices which tended to support his version of the relationship existing between him and plaintiff in the summer of 1961. Such actions, the trial judge said, reflected adversely on defendant's believability.

While defendant argues with vigor and at great length that the trial justice's findings are "clearly wrong," this is simply not so. Two diametrically opposed stories were told to the trial justice. There is no necessity to burden this opinion with a string of citations referable to the well-established law of this jurisdiction. The credibility of witnesses and the persuasive effect of their testimony is for the trier of fact. Essentially, defendant argues that he, rather than plaintiff's witnesses, should have been believed and that the inferences drawn from the evidence should have been in his favor rather than plaintiff's. Such an argument is for the trial court rather than this court.

Nor shall we disturb the Superior Court's judgment on a last-minute claim made by the defendant before us that the plaintiff's claim is based on an oral promise to pay the debt of another and thereby barred by G. L. 1956 (1969 Reenactment) §9-1-4—our Statute of Frauds. The trial judge apparently anticipating such a defense by the defendant made an express finding that the relationship between the plaintiff and the defendant was one of a creditor and a debtor and not one of a creditor and a guarantor. The record supports his conclusion.

The defendant's appeal is denied and dismissed.

*Marcaccio & Marcaccio, Thomas L. Marcaccio, Jr.,* for plaintiff.

*Friedman, Kramer & Kessler, Stephen A. Gordon,* for defendant.